### BANKERS' & SHIPPERS' INS. CO. OF NEW YORK v. SHARBER GROCERY CO. (No. 11797.)

Court of Civil Appeals of Texas. Fort Worth. May 28, 1927.

Rehearing Denied July 9, 1927.

**1. Insurance ⬥575—After good-faith failure of arbiters to agree as to third-man, parties held not required to appoint other arbiters.**

Where fire insurance policy made no provision as to procedure in case of disagreement between arbiters chosen by insured and insurer as to the selection of a third man, and where arbiters appointed failed to agree as to a third man after effort made in good faith so to agree, parties *held* not required to appoint other arbiters or do anything further towards arbitration.

**2. Appeal and error ⬥1060(1)—Argument of insured's counsel as to insurer's arbiter being an expert held prejudicial to insurer.**

In action on a fire insurance policy on a soda fountain, where arbiters appointed by insured and insurer could not agree on amount of loss sustained nor on third man to act as umpire, statement of insured's counsel in argument that expert arbiter appointed by insurer could pull the wool over the eyes of one not so expert *held* calculated to influence jury and create prejudice against insurer.

**3. Trial ⬥131(3)—Ordinarily, one objecting to argument should request instruction that jury should not consider it.**

Ordinarily, one objecting to argument of counsel ought to request court to instruct jury not to consider it.

**4. Evidence ⬥318(4)—Testimony that witness had seen in reports of appealed cases instances where arbiter was selected as appraiser by insurers held hearsay.**

In action on a fire insurance policy on a soda fountain, testimony of witness as to professional services of arbiter appointed by insurer, that he had seen in reports of appealed cases an instance or two in which arbiter was selected as an appraiser by insurance companies, *held* hearsay.

**5. Evidence ⬥543(4)—Witness held not qualified as expert to testify as to reasonable market value of soda fountain damaged by fire.**

In action on fire insurance policy on a soda fountain, witness who owned fountain formerly and sold it to insured not showing that he knew anything about the fountain's appearance and condition *held* not qualified as an expert to testify as to reasonable market value thereof.

Appeal from District Court, Denton County; W. S. Moore, Judge.

Action by J. E. Sharber and another, doing business under the name of the Sharber Grocery Company, against the Bankers' & Shippers' Insurance Company of New York. From a judgment for plaintiffs, defendant appeals. Judgment reversed, and cause remanded.

Thompson, Knight, Baker & Harris, of Dallas, for appellant.

Hopkins & Koons, of Denton, for appellees.

BUCK, J. J. E. Sharber and S. A. Bailey, doing business under the name of Sharber Grocery Company, filed suit in the district court of Denton county on an insurance policy, insuring the plaintiffs against loss by fire, in the sum of $800, on a soda fountain. The policy had a provision as follows:

"In event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraiser, respectively selected by them, and shall bear equally the expenses of the appraisal and umpire."

Defendant pleaded this provision in abatement, as follows:

"Now comes the defendant in the above entitled and numbered cause and makes and files this, its plea in abatement, and for such plea says that the policy sued on by plaintiffs provides, in substance, that in the event of disagreement between the parties as to the amount of loss, the same should be fixed by appraisers, one to be selected by the assured and one to be selected by the company, and the two so chosen to select an umpire, the appraisers together to estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire, and the award in writing of any two shall determine the amount of such loss, provided that no amount shall be due under the policy until 60 days after the ascertainment, estimate of satisfactory proof of loss therein required have been received by the company, including an award by appraisers, when appraisal has been required; and further providing that no suit or action on the policy should be sustained in any court of law or equity, until after full compliance by the assured with such requirements.

"Defendant would show that following the fire complained of by the plaintiff, a disagreement arose as between plaintiff and defendant relative to the amount of said loss, and pursuant to such disagreement appraisers were appointed, pursuant to the terms of said policy, but said appraisers have never returned an award in writing, as required by the terms of said policy, on which account, and because no proof of loss has been made, nothing is due or owing under the policy nor can plaintiff maintain this suit thereon.

"Therefore defendant prays that its plea in abatement be sustained, and for general relief."

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The evidence showed that the insurance company appointed A. L. Hartshorn, a citizen of Fort Worth, and the plaintiffs appointed George M. Hopkins, the attorney for plaintiffs. They could not agree on the amount of loss sustained by plaintiffs, nor could they agree on the third man to act as umpire. Mr. Hartshorn suggested a number of names for umpire, some of whom were engaged in the secondhand furniture business in Fort Worth, and one of whom lived in Dallas county, where the company had its agency, and Mr. Hopkins suggested the names of several men who lived in Denton county, and one, the former owner of the soda fountain destroyed by fire, who was living in Dallas county at the time of the dispute. The final result was that they failed to agree on the third man. The company finally offered to appoint another arbiter if the plaintiffs would likewise, but the plaintiffs objected to the arbiter proposed by the insurance company and made no further effort to appoint an arbiter.

The fire occurred February 10, 1926; on the same day the plaintiff made out and filed with the defendant proof of loss. Suit was filed May 27, 1926, over three months after the fire.

The court submitted to a jury certain special issues, in answer to which the jury found:

"(1) That the defendant issued its policy of insurance on or about September 8, 1925, whereby it insured the plaintiffs against loss or damage by fire in the sum of $800 on the soda fountain and fixtures. (2) That the soda fountain and fixtures so covered by said policy were destroyed by fire on February 10, 1926. (3) That the market value thereof was $800. (4) That proof of loss was made in due time. (5) That A. L. Hartshorn was not a disinterested appraiser. (6) That after the fire loss occurred, a disagreement arose between plaintiffs and defendant as to the amount of such loss. (7) That the defendant made a demand on plaintiffs to appraise the amount of the loss, such demand being made after the disagreement, and on February 25, 1926. (8) That plaintiffs named an appraiser also, who was George M. Hopkins. (9) That defendant notified plaintiffs of its willingness to appoint another person, and called on them to do likewise, but that plaintiffs did not accept said proposition."

Upon this verdict, the court rendered judgment for plaintiffs for $800, with 6 per cent. interest thereon from April 27, 1926, and overruled defendant's plea in abatement. From this judgment the defendant has appealed.

## Opinion.

During argument in the trial court, the counsel for plaintiffs used arguments to which the defendant objected, although the trial court, in approving the bills of exception reserving the exceptions, stated that no request was made by counsel for defendant for the court to instruct the jury to disregard the argument of which complaint was made. The arguments were as follows:

"(1) That the arbitration provision in the insurance policy is a curse that ought to be kept out of them by the law, because the companies are adroit and know what they are doing and are qualified to do it, and if they can cut you down on your loss by putting in an outside appraiser they will do it.

"(2) Mr. French [referring to defendant's adjuster] says he [referring to A. L. Hartshorn] has appraised for him [French] possibly three or four times in the last seven years."

And then counsel stated that French testified that he probably had personal knowledge of not more than 5 per cent. of the losses in Fort Worth and Dallas. Continuing, counsel for plaintiffs said:

"French does not know anything about 95 per cent. of the cases, yet he has used Hartshorn in seven years three or four times. If Hartshorn participated in the other losses to the same extent, for other adjustments of other losses, as he does for French, he would have served in twenty losses—5 per cent. is one-twentieth of 100 per cent.—twenty times in the last six or seven years, which would have been about eighty times that he served. Don't you think that would have made him a professional appraiser? Would he be disinterested?

"If you go into arbitration, you had better go into it with an arbitrator appointed by you who knows how to take care of you; if you don't, then an expert fellow like Hartshorn will come along and pick some man who will be favorable to him, some man he can control, some man over whose eyes he can pull the wool, and put it over you, and you will not get one-fourth of what you are entitled to in that appraisement."

[1] The policy does not provide what shall be done in case of a disagreement between the two arbiters chosen, as to the selection of a third man or an umpire. Nor does the Texas law require that such provision be incorporated in the fire insurance policy, or stipulate as to what shall be done in case the arbiters disagree as to the selection of a third man. In the absence of such provision, and in the absence of any statutory authority requiring further efforts to be made towards the arbitration, we are inclined to believe and so hold that if the two arbiters appointed by the plaintiff and the insurance company fail to agree as to the third man, after efforts made in good faith to so agree, that the parties are not required to appoint other arbiters, or do anything further towards an arbitration. Therefore we do not believe that the question of arbitration entered into this case as tried.

[2, 3] We are further of the opinion that at least some of the arguments used by counsel, and heretofore quoted, were reasonably calculated to influence the minds of the jury and create a prejudice against the defendant. It is customary for those who appoint an ar-

biter to appoint some one who they believe will look after their interest. While the practice should be, and in this case the provision in the policy required the parties seeking an adjustment by arbitration, to appoint competent and disinterested arbiters, yet we do not think there is any evidence to show that Hartshorn was not an honest and competent man and tried to do his duty as an arbiter. Even though he had had some experience in arbitration in matters of this kind, yet such experience did not disqualify him to act in this case. Certainly it could not reasonably be charged that he was more inclined towards the contentions made by defendant than the arbiter chosen by the plaintiffs was inclined towards the plaintiffs' contentions. Moreover, while ordinarily one objecting to the argument of counsel or to the admission of testimony ought to request the court to instruct the jury not to consider the same, yet our courts have often reversed judgments for improper argument where no such request was made. Western Union Tel. Co. v. Perry, 95 Tex. 645, 69 S. W. 131. This holding is doubtless based in part on the presumption that the trial court, having overruled the objection to the argument, would also overrule the motion to instruct the jury not to consider the argument.

[4] Moreover, there are other questions raised, which, we believe, show error. While George M. Hopkins was testifying for plaintiff, he was asked:

"What do you know about the professional services of Mr. A. L. Hartshorn as an appraiser?"

The defendant objected on several grounds, one of which was the testimony sought to be elicited was hearsay. The witness, over objection, was permitted to answer:

"And I have seen in our reports of appealed cases (I don't remember the case) an instance or two in which Mr. Hartshorn was selected as an appraiser by insurance companies."

Whereupon counsel for defendant moved the court to strike the answer. The court modified the bill of exception reserving the assigned error, by the statement that he stated at the time of the objection and the statement of the witness that he got some of his information from other people:

"I am sustaining the objection to all of it that he testifies to, that he got the information from other people."

Then certain questions to and answers of the witness Hopkins are recited in the bill concerning a land transaction.

We are unable to determine whether the ruling of the court that he sustained the objection to all the testimony which the witness got from other people was meant and understood by the jury and did sustain the objection to that part of the testimony reserved in this bill or not, yet certainly such testimony was hearsay. Since, however, we have concluded for reasons heretofore stated, that the judgment below must be reversed and the cause remanded, it will not be necessary to discuss this question further.

[5] We are further of the opinion that at least L. B. Lloyd did not qualify as an expert witness to testify as to the reasonable market value of the soda fountain involved in this suit. He did own the fountain formerly and sold it to plaintiff Sharber, but he had lived in Dallas since 1924, and it is not shown that he knew anything about the appearance and condition of the fountain at the time of the fire. This is a necessary element entering into the market value of the article.

For the reasons stated, the judgment is reversed and the cause remanded.